Leonard C. STALLINGS,
Appellant-Defendant,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 71S00–8606–CR–595.

Supreme Court of Indiana.

June 5, 1987.

Paul James Newman, South Bend, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

PIVARNIK, Justice.

Leonard C. Stallings was convicted by jury of Rape, a class A felony and was sentenced to 25 years imprisonment. He directly appeals raising three issues for our review: 1) admitting evidence obtained from a consent search of Stallings' residence, 2) refusing to permit testimony of the results of K.A.'s pregnancy test, and 3) sufficiency of the evidence.

The record shows on January 12, 1984, K.A. was walking to a bus stop on the way to school. Stallings drove up and asked if she wanted a ride. She refused, but eventually went with Stallings because he insisted and because he scared her. K.A. had seen Stallings a few times at a local Boys Club. Stallings drove K.A. to a house on Clinton Street in South Bend. He carried her inside to an upstairs bedroom, had her try on a pair of blue jeans, and then, while armed with a knife, forced her to have sexual intercourse with him.

Stallings then took K.A. to school. K.A. reported the rape to the assistant principal, who notified the police. K.A. pointed out the house to police. Police then took her to a hospital where a doctor and nurse pre-

pared a rape kit. They saw no injuries and tests revealed no sperm on K.A.'s body. A pregnancy test was administered.

On January 13, 1984, police searched the house with the consent of Robert Gilliam. They found a pair of blue jeans in one upstairs bedroom and a knife in another bedroom. Photographs of these items and of the house were taken. Gilliam had lived at the Clinton Street house, but did not reside there on the date of the rape.

## I.

Stallings first challenges the admission of the knife, the blue jeans and the photographs taken during the warrantless search of his home. Stallings made a pretrial motion to suppress the fruits of the search, which the court denied. A hearing was held on the motion to suppress, but the Record of Proceedings presented on appeal does not contain a transcript of the hearing. It is an appellant's duty to present an adequate record clearly showing the alleged error. *Jackson v. State* (1986), Ind., 496 N.E.2d 32, 33. Where he fails to do so, the issue is deemed waived. *Jackson,* 496 N.E.2d at 33.

Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Brames v. State* (1980), 273 Ind. 565, 406 N.E.2d 252, 255. The State bears the burden of showing the warrantless search falls under an exception to the warrant requirement. *Fisher v. State* (1984), Ind., 468 N.E.2d 1365, 1368. A valid consent to search obviates the warrant requirement. *Brames,* 406 N.E.2d at 255. Consent to search which is given by a third party having common authority with the defendant over the premises is sufficient to justify a warrantless search of the defendant's residence. *Brooks v. State* (1986), Ind., 497 N.E.2d 210, 215; *Fisher,* 468 N.E.2d at 1368; *Bruce v. State* (1978), 268 Ind. 180, 236, 375 N.E.2d 1042, 1072, *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662.

Common authority is not to be implied from the mere property interest a third party has in the property. *Bruce,*

268 Ind. at 236, 375 N.E.2d at 1072. The authority which justifies the third party consent rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Id.* When reviewing a trial court determination of the validity of a search, we consider the evidence favorable to the trial court's ruling and any uncontradicted contrary evidence. The test is sufficiency of the evidence. *Brooks v. State,* 497 N.E.2d at 215.

Stallings alleges Gilliam's consent to search was invalid and thus, the search was illegal. Stallings asserts that as co-owner and sole resident of the house, he had a reasonable expectation of privacy which could not be overcome by Gilliam's consent to search. The search was conducted pursuant to Gilliam's written consent, as co-owner of the house. Gilliam had lived in the house with his common law wife, Stallings' mother, until after her death. Gilliam then moved out, but permitted Stallings to continue to live there. Gilliam continued to let himself into the house to retrieve mail and to check on the condition of the house.

The police relied on Gilliam's claim of ownership to validate the consent to search. Further, the facts show Gilliam actually used the house. He maintained a right of entry to collect mail and to maintain the premises. Since Gilliam maintained such a right, it would be foreseeable for him to inspect the premises or to permit other persons to inspect the premises. *Bruce,* 268 Ind. at 236, 375 N.E.2d at 1072. We are presented with no evidence to the contrary. Because Gilliam retained such control over the premises, Stallings must have assumed the risk that Gilliam might permit others to inspect the premises. *Id.* Therefore, Gilliam had common authority with Stallings over the Clinton Street residence, and the written consent to search was valid.

## II.

Stallings next challenges the exclusion of evidence pursuant to the rape shield statute. He maintains the exclusion denied his right to cross-examine a doctor concerning the results of a pregnancy test administered to K.A. during the post-rape examination. He alleges the results would have impeached K.A.'s credibility.

 Any evidence of the victim's past sexual conduct, including the fact of the victim's pregnancy, is inadmissible under the rape shield act. *Moore v. State* (1979), 271 Ind. 464, 467, 393 N.E.2d 175, 177; Ind.Code Ann. § 35-37-4-4 (Burns 1985). Therefore, Stallings' efforts to bring K.A.'s pregnancy to the jury's attention were improper. Reference to a victim's past sexual conduct for impeachment purposes is properly excluded under the rape shield statute unless the exclusion denies the defendant's fundamental right to adequate and effective cross-examination. *Woodford v. State* (1986), Ind., 488 N.E.2d 1121, 1126. The statute has consistently been upheld over claims of denial of the right of confrontation unless a showing of actual impingement on cross-examination has been demonstrated. *Woodford*, 488 N.E.2d at 1126.

 Stallings attempted to introduce evidence of K.A.'s pregnancy in order to impeach her credibility. Stallings asserts the question was not an attempt to inquire into K.A.'s general sexual history, but rather, an attempt to attack her credibility as a witness. K.A. testified she was having her period on the day of the rape and had to remove a tampon prior to the attack. A nurse who assisted in the examination of K.A., testified she did not recall seeing any menstrual blood on K.A. Another State's witness testified she detected no blood on the victim's panties.

Evidence that K.A. was pregnant on January 12, 1984, may have shown she could not have been menstruating on that date and may have been relevant to her credibility. However, while the question of K.A.'s pregnancy may have had some probative value with respect to impeachment of her testimony, such probative value was slight and its prejudicial value far outweighed its probative value. Even if K.A. had tested positive for pregnancy, the pregnancy may have been at such an early stage that she did not yet realize she was pregnant. She may have been wearing a tampon because it was her usual time to be menstruating, not necessarily because she was, in fact, menstruating. K.A. was thoroughly cross-examined as to the events of the crime, how she knew Stallings, and on her testimony that she was menstruating and wearing a tampon. Thus, there is no showing of actual impingement on cross-examination and the trial court properly prohibited questioning on the results of the pregnancy test.

## III.

 Finally, Stallings argues the evidence presented at trial is insufficient to sustain his conviction for rape, claiming the victim's testimony is uncorroborated and not worthy of belief. Where there is substantial evidence of probative value from which the jury can find beyond a reasonable doubt that the defendant committed the offense, we will not disturb the verdict. *Roland v. State* (1986), Ind., 501 N.E.2d 1034, 1036-37. On review, we do not reweigh the evidence or judge the witnesses' credibility. *Roland*, 501 N.E.2d at 1037. Rather, we look to the evidence most favorable to the State, along with all reasonable inferences therefrom. *Id.* In rape cases, a conviction may be sustained solely on the testimony of the victim. *Id.*

Stallings claims that discrepancies in K.A.'s testimony render it unbelievable. One alleged inconsistency is K.A.'s testimony on how she was taken from the car to the house. Another alleged inconsistency is K.A.'s testimony that Stallings stopped at a gas station but stayed in the car with her. The gas station attendant testified Stallings came to the station with K.A., but that Stallings left the car for 3 to 5 minutes. The attendant stated K.A. never tried to leave the car. A third inconsistency is K.A.'s testimony that she was menstruating at the time of the attack. No evidence of menstrual blood was found. Fi-

nally, K.A. claimed she was forced to have intercourse against her will but no evidence of injury to the vaginal area nor sperm, semen or matching pubic hairs were found. These discrepancies show only that K.A.'s testimony conflicted with that of other witnesses. They do not render K.A.'s testimony inherently unbelievable. The jury may believe whomever they choose. *Wallace v. State* (1986), Ind., 492 N.E.2d 24, 25.

K.A. reported being raped on January 12, 1984. She was shown several photographs by the police and picked out a photograph of Stallings. K.A. had seen Stallings prior to January 12, a few times at a local Boys Club and at another bus stop. K.A. testified Stallings offered to give her a ride in his car and when she refused, he insisted. She went with him because he scared her. Instead of taking her to the bus stop, Stallings drove her to a house where he carried her inside, had her try on a pair of blue jeans, and then, while armed with a knife, forced her to have sexual intercourse with him.

Stallings claims K.A.'s testimony is uncorroborated. However, K.A. testified about a pair of blue jeans and a knife at the house where Stallings committed the rape. She identified the jeans and knife at trial. The jeans and knife were found by police inside Stallings' Clinton Street residence, where the rape occurred. The physical evidence, in fact, tends to corroborate K.A.'s testimony. Therefore, Stallings claim of insufficient evidence must fail, as sufficient probative evidence was presented to sustain the conviction.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.