**Stephen D. BROWN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 20S00–9401–CR–30.

Supreme Court of Indiana.

March 2, 1998.

John Pinnow, Greenwood, for Appellant.

Jeffrey A. Modisett, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

Defendant Stephen D. Brown was convicted of Murder [1] on October 5, 1984, following a jury trial. He was sentenced to a prison term of 60 years. This appeal was not filed until almost nine years later. We affirm.

### Background

The following facts and procedural history are relevant to the issues in this appeal.

1. Ind.Code § 35–42–1–1(1) (1982).

Defendant and the victim were observed leaving an Elkhart speakeasy at 3:00 a.m. one winter morning. Defendant maintained that he and the victim drove to an area outside the city at the victim's direction. There, he said, a truck came up behind him and when he exited his vehicle, he was badly beaten by the two occupants of the truck. At about 5:00 a.m., the defendant entered an all-night restaurant on the outskirts of Elkhart covered in blood. He told the employees and a police officer who subsequently arrived that he had been beaten by two men in a truck. He did not mention the victim. Later that morning, a vehicle was found abandoned in a snow drift. Nearby was the partially nude body of the victim, dead from multiple stab wounds. Also observed by the police were two sets of tire tracks, one set from the vehicle, another from an unidentified truck.

Tracing the vehicle to defendant's girlfriend, the police obtained her consent to search her residence where defendant resided and shared a bedroom with her. Certain evidence was seized during this and a subsequent search. Defendant was subsequently arrested and gave several conflicting versions of what happened, eventually maintaining the beaten-by-two-men-in-a-truck account.

Shortly after the trial began, the owner of the property where the girlfriend's automobile had been found contacted the prosecutor after hearing a news report about the trial. This individual thereupon testified at trial that very early in the morning in question, he had shoveled snow along the road using his own truck. The tires on his truck were shown to resemble the theretofore unidentified second set of tire tracks. Defendant was found guilty as charged.

No appeal was filed until almost nine years later. Then, appellate counsel filed the praecipe but before the brief was filed, counsel sought permission from this Court to return to the trial court for consideration of defendant's claims of instructional error and ineffective assistance of trial counsel. This Court granted the motion and the trial court heard the instruction and ineffective assistance claims and rendered findings of fact

and conclusions of law thereon. For convenience, the court in which defendant's original trial took place will be referred to in this opinion as the trial court and the court which heard the post-conviction claims of instructional error and ineffective assistance of counsel will be referred to as the post-conviction court.

Other relevant facts and procedural history will be provided when necessary.

### Discussion

Defendant raises three issues on appeal: (1) whether evidence seized without a warrant was improperly admitted at trial; (2) whether certain jury instructions impermissibly shifted the burden of proof; and (3) whether defendant was denied the effective assistance of trial counsel.

### I

Defendant contends that his Fourth and Fourteenth Amendment rights were violated when he was denied his right to be free from unreasonable search and seizure. We disagree.

The defendant lived in a home owned by his girlfriend with whom he shared a bedroom. On the morning of December 10, when the police arrived at defendant's residence, his girlfriend invited the police to enter into the home and took the police to an upstairs bedroom where the defendant was sleeping. Upon entering the room, one of the policemen noticed a knife on top of the dresser. Subsequently, the police asked the girlfriend for permission to search the residence to obtain the knife and she voluntarily signed a consent form. The girlfriend then provided the police with a pair of driving gloves that the defendant had been wearing the night before. The next day when the police returned to the defendant's residence, the girlfriend signed another consent form permitting the police to search for a ring which was located on a cosmetic table in the bedroom shared by defendant and his girlfriend.

■ The Fourth Amendment[2] protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 650, 81 S.Ct. 1684, 1688–89, 6 L.Ed.2d 1081 (1961). "'[I]n order to challenge a search as unconstitutional, a defendant must have a legitimate expectation of privacy in that which is searched.'" *Peterson v. State,* 674 N.E.2d 528, 532 (Ind.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 858, 139 L.Ed.2d 757 (quoting *Livingston v. State,* 542 N.E.2d 192, 194 (Ind.1989)). In determining whether a defendant has an expectation of privacy, we look to whether the defendant has control over or ownership in the premises searched. *Id.* (citations omitted). In a challenge to the constitutional validity of a search, defendant has the burden of demonstrating a legitimate expectation of privacy in the premises searched. *Id.* (citing *Livingston,* 542 N.E.2d at 194).

■ Our review of the record suggests that defendant did have a reasonable expectation of privacy. While defendant may not have owned the home in which he was residing, defendant had been living in the home with his girlfriend for two and a half months. *Cf. Livingston,* 542 N.E.2d at 194 (where we found no expectation of privacy because defendant "did not live in the house on a regular basis but merely slept in the room sometimes"). Thus, the circumstances indicate that at a minimum, defendant had control over the bedroom in which defendant slept, thereby establishing an expectation of privacy over the premises (*i.e.,* the bedroom) searched.

■ As a general rule, the Fourth Amendment prohibits a warrantless search. *Perry v. State,* 638 N.E.2d 1236, 1240 (Ind. 1994) (citing *Wright v. State,* 593 N.E.2d 1192, 1198 (Ind.1992)); *Stallings v. State,* 508 N.E.2d 550, 552 (Ind.1987). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Stallings,* 508 N.E.2d at 552; *Short v. State,* 443 N.E.2d 298, 303 (Ind. 1982). A valid consent to a search given by a third party who has common authority (or a sufficient relationship) to the premises to be searched is an exception which obviates the warrant requirement. *See Canaan v. State,* 683 N.E.2d 227, 231 (Ind.1997), *reh'g denied* (citing *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)); *Perry,* 638 N.E.2d at 1240; *Wright,* 593 N.E.2d at 1199; *Stallings,* 508 N.E.2d at 552. Common authority is not to be implied from the mere property interest a third party has in the property. *Perry,* 638 N.E.2d at 1241. The authority which justifies the third-party consent rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that each of the co-inhabitants has the right to permit the inspection in his or her own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Id.* When reviewing a trial court · determination of the validity of a search, we consider the evidence favorable to the trial court's ruling and any uncontradicted contrary evidence. *Id.* The test is sufficiency of the evidence. *Stallings,* 508 N.E.2d at 552.

■ Defendant asserts that the trial court erred in admitting the knife, gloves, and ring into evidence because the girlfriend's consent was invalid and the police could not reasonably believe that she had common authority over defendant's personal effects. We disagree with defendant. The issue is not whether the girlfriend had common authority over defendant's personal effects, but rather whether the girlfriend had common authority over the home, and specifically over the bedroom. As stated, the girlfriend owned the home and shared the bedroom with defendant. We can reasonably conclude that the cosmetic table and dresser

**2.** The Fourth Amendment to the United States Constitution provides the following:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

were under the common authority of both defendant and his girlfriend and that the police reasonably believed that the girlfriend, as owner of the home, had the authority to consent to the search. *See Canaan,* 683 N.E.2d at 231 (citing *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) ("official reliance on the consent may validate the search if it was reasonable for the officers to believe the third party had the requisite relationship"). *See also Perry,* 638 N.E.2d at 1241; *Wright,* 593 N.E.2d at 1199 (upholding the admissibility of a knife after a roommate's consent permitted officers to search lawfully the common areas of the residence from which the knife could be seen in plain view on a dresser in defendant's room). We find that the knife, gloves and ring were properly admitted.

## II

■ Defendant maintains that certain jury instructions regarding intent impermissibly shifted the burden of proof. Defendant did not object to these jury instructions at trial. Ordinarily, a failure to object to a jury instruction, results in waiver of the issue. Ind.Crim.Rule 8(B); *Sanchez v. State,* 675 N.E.2d 306, 308 (Ind.1996) (citing *Burton v. State,* 526 N.E.2d 1163, 1165 (Ind.1988)). However, an error may be fundamental and thus not subject to waiver, if it is a "substantial blatant violation of basic principles." *Winegeart v. State,* 665 N.E.2d 893, 896 (Ind. 1996) (citing *Townsend v. State,* 632 N.E.2d 727, 730 (Ind.1994)). Fundamental error is error that, if not corrected, would deny a defendant fundamental due process. *Jackson v. State,* 575 N.E.2d 617, 621 (Ind.1991). The error must be so prejudicial to the rights of a defendant as to make a fair trial impossible. *Winegeart,* 665 N.E.2d at 896 (quoting *Barany v. State,* 658 N.E.2d 60, 64 (Ind. 1995)).

In asserting that the jury instructions constituted fundamental error, defendant relies on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which held that an impermissible shift in burden of proof constituted a denial of due process. Defendant maintains that the challenged instructions constituted such a shift because they

created a mandatory presumption in favor of the State.

■ In analyzing this claim, we follow the standard announced by the United States Supreme Court in *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts." *Winegeart,* 665 N.E.2d at 904 (quoting *Francis,* 471 U.S. at 314–15, 105 S.Ct. at 1971–72). These types of presumptions "violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense." *Id.* However, sometimes instructions create permissive inferences rather than mandatory presumptions. "A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicated facts, but does not require the jury to draw that conclusion." *Id.* Such an inference "does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Id.* Permissive inference instructions "violate the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.* The Supreme Court in *Francis* also established that if a challenged instruction does not pass constitutional muster, then the instruction "must be considered in the context of the charge as a whole," because the instruction may be sufficiently explained by other instructions such that an unconstitutional presumption was not created. *Francis,* 471 U.S. at 315, 105 S.Ct. at 1971–72.

■ The defendant challenges three jury instructions. The first instruction challenged stated:

You are instructed that intent and purpose to kill may be inferred from the deliberate use of a deadly weapon in a manner calculated to produce death. A deadly weapon includes the following:

1. A loaded or unloaded firearm; or

2. A weapon, device, equipment, chemical substance, or other material that in the

manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury.

(R. at 66.) We find that this instruction creates only a permissive inference and not a mandatory presumption. The members of the jury were told that it was permissible for them to infer intent from the deliberate use of a deadly weapon, not that they were required to draw that inference.[3] Thus, this instruction passes the constitutional muster of both *Sandstrom* and *Francis.* We hold that no fundamental error resulted from the reading of this jury instruction.

■ Defendant also challenges the following two jury instructions:

You are further instructed that the state is not required to make proof of felonious intent, as a fact, by direct and positive evidence. The state is only required to produce such evidence as will satisfy the jury beyond a reasonable doubt that the crime charged was committed by the defendant with the felonious intent charged in the information. A determination of the defendant's intent may be arrived at by the jury from a consideration of the defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points.

(R. at 67.)

You are instructed that where a certain kind of culpability is required to make an act an offense, such as in the charge preferred [sic] against the defendant, it is not always possible to prove a purpose by direct evidence, for purposes and intent are subjective facts. That is, they exist within the mind of man, and since you cannot delve into a person's mind and determine his purpose and intent, you may look to all the surrounding circumstances, including what was said and done in relation thereto. You may, however, infer that every person intends the natural and probable consequences of his voluntary acts, unless the circumstances are such to indicate the absence of such intent. When an unlawful act, however, is proved to be knowingly done, no further proof is needed on the part of the State in the absence of justifying or excusing facts.

(R. at 44; 76.)

■ We find no fundamental error in these instructions. We have upheld substantially similar instructions. *See Winegeart,* 665 N.E.2d at 903 (exactly the same language); *Ortiz v. State,* 558 N.E.2d 820, 821 (Ind.1990); *Howey v. State,* 557 N.E.2d 1326, 1331 (Ind.1990). *See also Holliday v. State,* 601 N.E.2d 385, 390–391 (Ind.Ct.App.1992); *Elswick v. State,* 565 N.E.2d 1123, 1128 (Ind. Ct.App.1991). We reiterate our reasoning in *Winegeart,* where we stated that the phrases "may look to," "may infer," and "may consider," are indicative of permissive inferences, not mandatory presumptions. *Winegeart,* 665 N.E.2d at 904.

## III

Defendant asserts that he was denied the effective assistance of counsel to which he was constitutionally entitled because of trial counsel's (1) failure to investigate fully, (2) failure to comply with discovery orders, (3) failure to call witnesses suggested by defendant, and (4) abandonment of defendant on appeal.

■ We analyze claims of ineffective assistance of counsel according to the two-part test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80

---

**3.** *See Howey v. State,* 557 N.E.2d 1326, 1331 (Ind.1990) (where the court found there to be no error in an instruction which merely entitled the jury to infer malice and intent if it found certain facts to exist.); *Spranger v. State,* 498 N.E.2d 931, 939 (Ind.1986) (where the jury was instructed that "knowingly" and "intentionally" may be inferred from the alleged act itself, "if established by the evidence, taken into consideration with all of the facts and circumstances surrounding or related to such act, as disclosed by the evidence, if the jury should determine such an inference should be drawn"); *Norton v. State,* 273 Ind. 635, 666, 408 N.E.2d 514, 534 (1980) (where the jury was provided an instruction which stated that "If the act of killing is perpetrated with a deadly weapon used in a manner likely to produce death, the purpose to kill may be inferred from the act of killing."); *Sypniewski v. State,* 267 Ind. 224, 228, 368 N.E.2d 1359, 1362 (1977) (where the court found the following instruction to be an accurate statement of existing law: "An intent and purpose to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death.").

L.Ed.2d 674 (1984). *See, e.g., Canaan,* 683 N.E.2d at 229; *Lowery v. State,* 640 N.E.2d 1031, 1041 (Ind.1994). First, defendant must show that, in light of all the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Canaan,* 683 N.E.2d at 229 (citing *Lowery,* 640 N.E.2d at 1041). In order to make such a showing, defendant must demonstrate that counsel's performance was unreasonable under prevailing professional norms. *Id.* Second, the defendant must show adverse prejudice as a result of the deficient performance. *Id.* This requires a demonstration that counsel's performance was so prejudicial that it deprived the defendant of a fair trial. *Id.* There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Bellmore v. State,* 602 N.E.2d 111, 123 (Ind.1992). An appellant must present strong and convincing evidence to rebut that presumption. *Duncan v. State,* 514 N.E.2d 1252, 1253 (Ind. 1987). Counsel's conduct is assessed based on facts known at the time and not through hindsight. *State v. Moore,* 678 N.E.2d 1258, 1261 (Ind.1997).

## A

■ Defendant's claim of ineffectiveness due to failure to investigate fully arises from the fact that counsel did not interview the owner of the property where the automobile was found. As noted in *Background, supra,* this individual contacted the prosecutor after defendant's trial had begun and ultimately provided an explanation for the second set of tire tracks different from defendant's. According to defendant, defense counsel's failure to interview the property owner before trial resulted in the property owner being a "surprise witness" for the State and left defendant with no evidentiary support for his account of the night's events. Br. of Appellant at 36. We reject this claim for two reasons.

First, the post-conviction court found that trial counsel had conducted an adequate investigation generally in this case:

In preparing Brown's defense, [counsel] visited the scene of the crime several times, conducted at least two lengthy interviews with Brown in the Elkhart County Security Center, met with Brown on other occasions in the Elkhart County Courts Building, reviewed the State's evidence, talked to police officers, interviewed witnesses named by Brown, including Lena Hansborough, JoLynn Taylor, Billy Campbell, and Shirley Taylor, and filed and argued three motions to suppress evidence.... [Counsel] believed that the testimony of the surprise witness did not affect Brown's defense.

(Supp.R. at 90.) We have held that an isolated omission or error is not itself evidence of deficient performance. *See, e.g., Johnson v. State,* 510 N.E.2d 174, 175–76 (Ind.1987), (where defendant claimed that trial counsel was ineffective for failing to conduct an adequate investigation, including locating and calling as a witness one of the co-conspirators, we affirmed the trial court's finding that even though trial counsel unsuccessfully attempted to locate the co-conspirator, trial counsel had consulted with defendant on 10–15 occasions, received and reviewed witness statements and interviewed police officers, other witnesses and codefendants), *judgment vacated on other grounds,* 516 N.E.2d 1053 (Ind.1987); *Gajdos v. State,* 462 N.E.2d 1017, 1024 (Ind.1984) (where defendant contended that trial counsel was ineffective for failing to investigate a witness and call the witness to trial, we determined that since nothing in the record reflects what the witness would have testified to and because trial counsel had "interviewed other witnesses, filed various pretrial motions, and conducted an adequate defense at trial," counsel's alleged failure to investigate one witness does not constitute ineffective assistance of counsel); *Bryant v. State,* 273 Ind. 603, 609, 406 N.E.2d 1177, 1181 (1980).

Second, defendant has not shown how pretrial contact with the property owner would have minimized the damaging testimony, produced a different result, or have avoided any prejudice which defendant claims to have resulted.[4] *See Spranger v. State,* 650 N.E.2d

---

4. Although not dispositive of this claim, we note

that apparently the State was also unaware of

1117, 1122 (Ind.1995) (where defendant claimed that further investigation might have uncovered additional information, we determined that this by itself does not constitute ineffective assistance of counsel and that defendant must not only prove that counsel was deficient, but that the deficient performance resulted in prejudice); *K.W. v. Logansport State Hospital*, 660 N.E.2d 609, 615 (Ind.Ct. App.1996) (Allegations that counsel "failed to investigate issues that arguably may have resulted in a different trial strategy do not amount to ineffective assistance absent a showing of what additional information may have been garnered either from further consultation or investigation and how that additional information would have aided in the preparation of his case."). *See also Johnson v. State*, 675 N.E.2d 678, 686 (Ind.1996) (quoting *Tidmore v. State*, 637 N.E.2d 1290 (Ind.1994)) ("no showing whatever that had counsel taken depositions or interviewed [witnesses] the outcome of the trial would have been any different"); *Clayton v. State*, 658 N.E.2d 82, 85 (Ind.Ct.App.1995) (trial counsel found not to be ineffective for failure to interview potential alibi witness because defendant failed to show how the witness's testimony would have changed the outcome or how defendant was prejudiced).

B

■■■■ Defendant claims that counsel's failure timely to comply with the court's discovery orders resulted in ineffective assistance of counsel. The post-conviction court found that trial counsel "failed to comply with the terms of a discovery order until after the Court held a hearing on his alleged contempt for failing to do so." (Supp.R. at 90.) Counsel admitted that his failure to

comply with the discovery orders was partially due to defendant's failure to pay attorney fees and also due to other obligations. (Supp.R. at 116.) While we agree with defendant that counsel's performance fell below reasonable professional norms, defendant has not shown how he has been prejudiced nor how the result of the proceeding would have been different. *See Moore*, 678 N.E.2d at 1261 (on a claim of ineffective assistance of counsel, defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different). Defendant's counsel was not sanctioned by the trial court and defendant was not prevented from introducing any evidence at trial. Because we determine that defendant has shown no prejudice, we find that counsel's failure to comply with discovery orders does not entitle him to relief.[5]

C

■■■■ Defendant asserts that counsel's failure to call witnesses suggested by defendant resulted in ineffective assistance of counsel. We disagree with defendant. A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess, *Fugate v. State*, 608 N.E.2d 1370, 1373 (Ind.1993), although a failure to call a useful witness can constitute deficient performance, *Clark v. State*, 561 N.E.2d 759, 763 (Ind.1990).

■■■■ The post-conviction court found that trial counsel interviewed witnesses named by defendant and that defendant "did not identify any witnesses who had seen him after 2:00 a.m. on the morning of the victim's death, which occurred after 3:30 a.m., or any witnesses who had been present at the scene of

this witness, that defendant was allowed to interview the witness prior to the witness's testimony, and that the witness testified without objection from the defendant. No claim is made in this appeal that the State withheld material evidence or that trial counsel was ineffective for failing to object to the testimony.

5. Defendant suggests that he was prejudiced because there was either an actual or constructive denial of the assistance of counsel. In support of this argument, defendant refers us to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *United States v. Cronic*,

466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Although defendant offers no other argument for this claim, it appears that defendant is suggesting that we find counsel presumptively ineffective for his failure to comply with discovery. Failure to comply with discovery is not one of the examples of presumptive ineffectiveness given by the Court in *Cronic*, 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25, and particularly in the absence of any argument to the contrary by defendant here, we do not find it rises to that level.

the victim's death." (Supp.R. at 90.) During the post-conviction hearing, counsel stated that after interviewing all the witnesses, he concluded that the information these witnesses had was irrelevant to defendant's defense that he did not kill the victim. Br. of Appellant at 18. Defendant merely suggests that these witnesses could have testified as to whether defendant was at the same table with victim some time that evening, but does not suggest that these witnesses had any information regarding whether he was responsible for the victim's killing. We find no deficient performance in counsel's decision to not call these witnesses. *Cf. Lowery,* 640 N.E.2d at 1048 (exercise of counsel's discretion not to call certain witnesses not ineffective assistance of counsel).

### D

■ Defendant suggests that counsel's abandonment of defendant's appeal resulted in ineffective assistance of counsel. Defendant argues that counsel abandoned defendant after sentencing by failing to file a motion to correct errors and failing either to file a motion to withdraw his appearance or to notify the court that he would no longer be representing defendant. The post-conviction court found that counsel's representation of defendant after sentencing fell below prevailing professional norms, but that defendant failed to establish any prejudice which resulted from counsel's deficient performance. We agree with the findings of the post-conviction court in both respects. Indeed, we disciplined trial counsel in this case for neglecting defendant's appeal. *In re Jarrett,* 602 N.E.2d 131, 134–35 (Ind.1992).

■ Defendant asserts that counsel's abandonment caused a delay in the appellate process which resulted in a denial of due

process. We recently reviewed a claim of appellate delay in *Allen v. State,* 686 N.E.2d 760 (Ind.1997). There we elected to assess the appellant's claim utilizing a slightly modified version of the four-pronged speedy trial standard adopted in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and do so here as well. The *Barker* test's four prongs are: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right to timely adjudication of his appeal; and (4) the prejudice attaching to the defendant as a result of excessive delay. *Allen,* 686 N.E.2d at 783 (citing *Barker,* 407 U.S. at 530, 92 S.Ct. at 2191–92). Within this fourth prong are three recognizable types of prejudice: "oppressive incarceration, constitutionally cognizable anxiety pending the appeal's disposition, and impairment of the defendant's substantial rights either on appeal or in a new trial." *Id.* (citing *Harris v. Champion,* 15 F.3d 1538, 1547 (10th Cir.1994)). Defendant "must make a particularized showing of prejudice caused by any excessive delay." *Id.* (citing *Harris,* 15 F.3d at 1559).

Defendant claims that the nine year delay from the date of sentencing until the filing of the record of proceedings on appeal was excessive and that the primary reason for the delay was his trial counsel's abandonment of the appeal.[6] Although we agree that trial counsel's performance after sentencing was inadequate, we do not believe that trial counsel's abandonment was the primary reason for the delay in defendant's appeal. While we concede that nine years is a long time to await for an appeal, some of the reasons for the delay appear to be due to defendant's own lack of diligence. The record indicates that defendant waited almost a full year before requesting assistance from the trial

---

**6.** Defendant also argues that a "secondary reason for the delay is that the State dragged its heels in producing a transcript when [defendant] filed petitions for habeas corpus in federal court." Br. of Appellant at 40. The record reflects that after defendant's first and second habeas corpus petitions were dismissed, his case was set for oral argument before the Seventh Circuit, at which point the State produced the transcript of the proceedings. The record also indicates that in 1985, defendant was advised in writing by the Clerk of the Court that he had to

file the proper paperwork to request his records. Defendant now alleges that he did not know what the proper paperwork was and as a result filed his 1990 federal habeas corpus petition. We find it unnecessary to comment on whether the State played any role in delaying the preparation of the transcript of the proceedings because (1) the record does not reflect any wrongdoing on the part of the State and (2) the delay between 1985 to 1990 was primarily due to defendant's own lack of diligence.

judge. He then let another five years pass before filing any request for review.[7] During that time, defendant participated in a paralegal course for three years in order to "learn more about the law." Br. of Appellant at 40. We find defendant's conduct not only indicates that he was responsible for much of the delay, but also that he failed to assert his right to a timely resolution of his appeal. In fact, defendant never filed any documents indicating his desire for speedy appellate review. *See Allen,* 686 N.E.2d at 784.

Finally, by not showing any resulting prejudice, defendant has failed to meet the most important prong of the *Barker* test. Defendant merely argues that "the excessive delay in the appeal process and opposition from the State maximized the amount of anxiety [defendant] faced while awaiting the outcome of his appeal." Br. of Appellant at 41. We rejected a substantially similar argument in *Allen*[8] because such an argument "fails to specify any particular and substantial anxiety resulting from the delay." *Allen,* 686 N.E.2d at 784. For the same reason, we reject defendant's claim that he suffered prejudice because of the anxiety endured from the excessive delay.

### Conclusion.

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

---

7. He then filed a petition for federal habeas corpus review, rather than a praecipe for state appellate review.

8. In *Allen v. State,* 686 N.E.2d 760, 784 (Ind. 1997), the defendant argued:

It is difficult to imagine anything more anxiety-producing and more inhumane, than the daily and agonizing specter of your own execution at the hands of a system which has repeatedly violated your most precious constitutional rights.