## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2015, 7:58 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| **APPELLANT PRO SE** | **ATTORNEYS FOR APPELLEE** |
| Devon Sterling<br>Pendleton, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Eric P. Babbs<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Devon Sterling,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 30, 2015<br><br>Court of Appeals Case No.<br>49A02-1412-PC-891<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kurt M. Eisgruber, Judge<br><br>Trial Court Cause No.<br>49G01-0706-PC-105725 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Devon Sterling was found guilty of murder. The trial court entered judgment of conviction and sentenced Sterling to sixty years executed in the Indiana Department of Correction. On direct appeal, we affirmed Sterling's conviction. *Sterling v. State*, No. 49A05-0910-CR-606 (Ind. Ct. App. Aug. 11, 2010), *trans. denied*. Thereafter, Sterling filed a petition for post-conviction relief wherein he alleged ineffective assistance of trial counsel and newly discovered evidence. The post-conviction court denied Sterling's petition. Sterling, *pro se*, now appeals the denial of post-conviction relief, raising three issues for our review, which we consolidate and restate as: 1) whether the post-conviction court erred in concluding Sterling's trial counsel was not ineffective; and 2) whether Sterling's post-conviction counsel rendered ineffective assistance. Concluding trial and post-conviction counsel were not ineffective, we affirm.

# Facts and Procedural History

[2] We summarized the facts and procedural history of this case in Sterling's direct appeal,

> On June 8, 2007, Sterling was attending the same neighborhood block party as the decedent, Dewayne Butts. Several months before, there had been a dispute between Dewayne and Sterling's father concerning the ownership of a dog that, at the time, Dewayne had at his mother's home. A physical argument ensued between Dewayne and Sterling's father, and the dog was given to the Sterlings. Because of this prior confrontation, both

Dewayne and his girlfriend, Marie Ball, were familiar with Sterling at the time of the block party.

Before leaving the block party, Dewayne and Sterling had a tense encounter and had to be separated by Marie. Dewayne and Marie headed to her vehicle, accompanied by Marie's daughter, DeAsia, and Dewayne's mother, Judy Butts, and her niece, Rockita Brown. Before leaving, while all five were seated inside Marie's vehicle, Dewayne and Marie were both shot multiple times. The shooter, standing outside the passenger's window, was later identified by both Marie and Rockita as Sterling. Dehaven Butts, who was standing near the vehicle at the time of the shooting, identified Sterling as the man he witnessed running from the vehicle in the moments after the shooting. Dewayne died as a result of the gunshot wounds.

Sterling turned himself into police on June 10, 2007, and was accompanied by his family, who had retained counsel for him. Detective David Labanauskas was aware that they were awaiting the arrival of counsel, but the interrogation proceeded when Detective Labanauskas learned that the attorney had been delayed. The State subsequently charged Sterling with the murder of Dewayne and the attempted murder of Marie.

The case proceeded to a jury trial on September 29, 2008, during which Sterling testified about the dog incident, a .40–caliber gun he owned, and an asserted alibi defense that he subsequently withdrew at a second trial. The trial court [sic] resulted in a hung jury, and a mistrial was declared.

A new trial commenced on July 20, 2009. Sterling's motion to suppress the statement he made to the police was denied before the second trial. The second trial court admitted Sterling's statement to Detective Labanauskas, along with a redacted version of Sterling's testimony from the first trial, evidence of the

.40–caliber bullet and casings found in the vicinity of the crime, and evidence of the dog incident. However, the trial court did not allow Sterling to introduce evidence of another suspect.

At Sterling's second trial, Marie and Rockita both identified Sterling as the shooter with 100% certainty. In addition, Dehaven testified that he was certain he saw Sterling fleeing the scene in the moments after the shooting. On July 23, 2009, the jury found Sterling guilty of murder and not guilty of attempted murder.

*Id.* at *1-2.

On December 9, 2009, while a direct appeal was pending, Sterling filed a *pro se* petition for post-conviction relief, alleging judicial misconduct and that his trial counsel, Robert Hammerle, rendered ineffective assistance.[1] Because Sterling's direct appeal was still pending and Hammerle was acting as Sterling's appellate counsel, the post-conviction court granted the State's motion to dismiss the post-conviction petition. Hammerle continued as appellate counsel in the direct appeal and argued on Sterling's behalf the trial court abused its discretion in

---

[1] As to the judicial misconduct claim, Sterling requested a new judge hear his post-conviction petition because the trial court judge allegedly showed prejudice and bias during the trial. As to the claim of ineffective assistance of trial counsel, Sterling alleged counsel failed to make proper objections at the defendant's trial and sentencing hearing, and counsel failed to call Sterling's key witnesses. Relevant here, Sterling specified,

[C]ounsel should have made a verbal objection, are [sic] requested a new trial or made some jesture [sic] to the court at the defendant [sic] sentencing hearing when the State's "Marie Ball" key witness made an inconsistent statement, different from the one that was made at the defendant's second trial. (see both second and sentencing transcripts) One saying that the defendant was the shooter, other saying he was not the shooter.

Appellant's Appendix at 53. Sterling also claimed Marie Ball's testimony should have been excluded as inadmissible hearsay.

admitting, and excluding, certain evidence. Finding no reversible error, we affirmed Sterling's conviction.

[4] On April 4, 2011, Sterling re-filed his *pro se* petition for post-conviction relief. On May 2, 2012, Sterling, through post-conviction counsel Hillary Bowe Ricks, amended his petition.[2] However, on June 28, 2012, Sterling filed a *pro se* motion to withdraw Bowe Ricks as counsel, and a motion to withdraw his post-conviction petition without prejudice. The post-conviction court granted Sterling's motions. Two weeks later, Sterling filed a motion to reinstate both his petition for post-conviction relief, and Ricks as his post-conviction counsel. The post-conviction court granted the motion.

[5] On October 1, 2013, Sterling amended his petition for the final time. Sterling's petition alleged newly discovered evidence existed and Hammerle rendered ineffective assistance in failing to call key witnesses and in failing to object to certain comments made by the deputy prosecutor. Sterling did not allege Hammerle rendered ineffective assistance as appellate counsel.[3] On December

---

[2] In this amendment, Sterling claimed only ineffective assistance of trial counsel. Specifically, Sterling claimed trial counsel failed to object to improper comments by the deputy prosecutor and failed to call key witnesses. The amendment did not include any allegation the State used the perjured testimony of Marie Ball to convict Sterling.

[3] We note there is a single reference to a claim of ineffective assistance of appellate counsel in both the State's proposed findings of fact and conclusions of law, and the post-conviction court's findings of fact and conclusions of law denying Sterling's petition for post-conviction relief. However, neither the State, Sterling, nor the post-conviction court addressed at the evidentiary hearing whether Hammerle was deficient as appellate counsel. In addition, we note the record does not include Sterling's proposed findings of fact and conclusions of law, assuming he did, in fact, file such proposed findings. Therefore, we presume the references to ineffective assistance of appellate counsel were due to the fact Hammerle represented Sterling at trial *and* on direct appeal.

8, 2014, the post-conviction court entered its findings of fact and conclusions of law denying Sterling's petition for post-conviction relief. The post-conviction court concluded: 1) Sterling presented no evidence or argument to support his claim of newly discovered evidence;[4] and 2) Hammerle was not deficient in failing to call certain witnesses and in failing to object to the deputy prosecutor's comments. Sterling, *pro se*, now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Post-Conviction Standard of Review

[6] "Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. Post-conviction procedures create a narrow remedy for subsequent collateral challenges to convictions, and those challenges must be based on the grounds enumerated in post-conviction rules. *Id.* The petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

---

[4] On appeal, Sterling does not argue the post-conviction court erred in concluding he presented no evidence or argument to support his claim of newly discovered evidence.

A petitioner who has been denied post-conviction relief faces a "rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). In reviewing the judgment of a post-conviction court, we consider only the evidence and reasonable inferences supporting the judgement. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). We may not reweigh the evidence or reassess the credibility of the witnesses. *Id.* The post-conviction court's denial of post-conviction relief will be affirmed unless the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Hall*, 849 N.E.2d at 469. Finally, we do not defer to the post-conviction court's legal conclusions, but do accept its factual findings unless they are clearly erroneous. Ind. Trial Rule 52(A); *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003).

## II.  Ineffective Assistance of Trial Counsel

We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the petitioner must show 1) his counsel's performance was deficient, and 2) the lack of reasonable representation prejudiced him. *Id.* at 687-88. These two prongs are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S.Ct. 2376 (2015). Therefore, "if it is easier to dispose of

an ineffectiveness claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

[9] To satisfy the first prong, the petitioner must show counsel's representation fell below an objective standard of reasonableness and counsel committed errors so serious petitioner did not have the "counsel" guaranteed by the Sixth Amendment of the United States Constitution. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

[10] Under this standard, "[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). We recognize a strong presumption counsel rendered adequate legal assistance. *Id.* To overcome this presumption, the defendant must offer "strong and convincing evidence . . . ." *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

[11] Here, Sterling contends Hammerle rendered ineffective assistance in failing to object to statements made by the deputy prosecutor during the State's closing argument and in failing to call key witnesses. As a result, Sterling claims he

suffered prejudice because had Hammerle rendered reasonable representation, the result of trial may have been different. We disagree.

## A. Failure to Object

[12] "To prove ineffective assistance for failure to object to the State's closing argument, a defendant must prove that his objections would have been sustained, the failure to object was unreasonable, and that he was prejudiced." *Lambert v. State*, 743 N.E.2d 719, 734 (Ind. 2001) (citation omitted), *cert. denied*, 534 U.S. 1136 (2002). During closing argument, the deputy prosecutor alleged Hammerle had attempted to confuse and deceive the jury during trial:

> Hammerle is very, very good. I've been doing this a long time, and I like to think I'm pretty good at this. He's very good. But you know what? Think about some of the things that were done there. Think about some of the questions. I had to write them down. I don't usually have any notes, but I wrote them down. I can't – I can't characterize it any other way than an effort to confuse you or deceive you. He asked questions to the detective: Did Marie ever tell you that in her statement that the person that did it was the guy with the dog, the guy with the dog incident? No. Why do you ask that question? No. Because he's got to get you to believe that she's lying. Do you know what she said? It was the guy who Wayne hit with the nose. Aren't they the same people? Wasn't it the same person? Why does he ask you that question unless he's trying to confuse you, make Marie out to be somebody who can't remember or is telling you – not telling you the truth. It was the same person. She didn't say it was the dog incident, no. She said it was the guy who Dewayne hit, his dad, with the nose. Aren't those the same people? But why do that unless he's trying to mislead you? You know, the glasses. Marie, you wear glasses, don't you. He sits up there the whole time, he has her read the whole time and then tries to persuade

you that she's got some vision problem so she couldn't identify anybody. She didn't have any problem reading anything that was there, but it's trying to confuse you. Poor Rockita. One of the other things he said: Rockita, well, didn't Judy pull you down after the shots? He knew she didn't pull him [sic] down. He knows that. He's got all those statements – the statement they made to the police, the deposition that was taken by Ms. Devane, the prior hearing, today. He had them all charted. Do you see all the notes (inaudible) there? He's got them all charted like this. He knew very well that Judy didn't pull him down, but he asked her leading questions: Didn't Judy pull you down? Because if she says yes, then he's going, well, then you couldn't possibly have seen. Then do you know what he said? Well, didn't you have your face over here like that? Well, yeah. He knew that. He knew that already. You only say those kinds of things when you're a defense attorney if you're trying to confuse, trying to create the illusion of reasonable doubt. So when he comes up here in a little bit, he's going to say, you know, you might think [Sterling] did it, but that's not good enough. Maybe he probably did it, but that's not good enough. It's proof beyond a reasonable doubt. You know, maybe he did it, I don't know, but that's not good enough. He used these confusion tactics, these lawyer tactics that are designed to try to create the illusion of reasonable doubt to confuse you . . . .

Post-Conviction Relief ("PCR") Hearing Exhibit C at 20-23.

[13] Hammerle did not object to the statements. Instead, Hammerle specifically addressed the deputy prosecutor's statements in his closing argument:

If it please the Court, ladies and gentlemen, [Deputy Prosecutor] Cummings. No man in a free country should be denied the right to counsel in a fair trial. No man in a free county shall be denied the right to counsel in a fair trial. Who said that? John Adams. When? When he took up the case of Captain Preston at the

Boston Massacre, when everybody told him to stay away from him because the emotions of the community wanted that man convicted, but John Adams knew that founding this country, put into our Constitution, is the fact that if we've got a country worth living in, if we've got a country where we're going to protect our rights, then you've got to stand tall with an accused and he's got the right to counsel. I will not apologize for that. I am proud of it . . . .
* * *
But let me tell you this: That [Deputy Prosecutor] Cummings would stand here and take issue, that would take issue with me questioning the witnesses? Cross-examination is a Constitutionally guaranteed right. That he would belittle me, make fun of me because I would exercise that right, somehow cast aspersions or doubt that I'm something less or something sinister? This is as [sic] truth-seeking process . . . .

*Id.* at 24-25. At the post-conviction evidentiary hearing, Hammerle stated why he did not object at trial:

I've been around the horn too many times and tried too many of these type [of] cases where what I'm not going to do, when I still have my day and time to argue, is to get lost and let the jury think that I'm simply whining or can't take a hard shot.

PCR Hearing Transcript at 57.

[14] It is evident Hammerle's strategy to defuse the impact of the deputy prosecutor's statements was not to object, but to specifically address the statements, and Sterling's constitutional rights, during his closing argument. *See Carter v. State*, 738 N.E.2d 665, 676 (Ind. 2000) (noting it was reasonable for defense counsel to decide that objecting to comments made by the State during

closing argument "would only agitate the jury when it was so close to getting the case"). Counsel is afforded considerable discretion in choosing strategy and tactics, and we are not persuaded Hammerle's failure to object was unreasonable, and we are therefore not led to a conclusion opposite that reached by the post-conviction court. *See McCary*, 761 N.E.2d at 391.

## B. Failure to Call Witnesses

"A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess, although a failure to call a useful witness can constitute deficient performance." *Brown v. State,* 691 N.E.2d 438, 447 (Ind. 1998) (citation omitted). We will not declare counsel ineffective for failure to call a particular witness absent a clear showing of prejudice. *Grigsby v. State*, 503 N.E.2d 394, 397 (Ind. 1987).

The post-conviction court found Sterling's counsel in his first trial presented the jury with Sterling's proposed witnesses, his version of the facts, and his alibi defense. That trial resulted in a hung jury, with the jury voting 11-1 to convict. At the second trial, Hammerle took over as trial counsel and contemplated a change in strategy. The post-conviction court found Hammerle "reviewed all the discovery that was available to him from the first trial . . . and interviewed al [sic] of [Sterling's] proposed witnesses." Appellant's App. at 140.

During the post-conviction hearing, Hammerle stated he interviewed Sterling's proposed witnesses and not one witness could establish a credible and viable alibi for Sterling. Moreover, Hammerle testified many of the witnesses would

have lacked credibility in front of a jury and some would have corroborated the State's theory by placing Sterling at the scene of the crime, thus mitigating an attempt to create reasonable doubt.[5]   After interviewing the witnesses and reviewing all of the discovery available from the first trial, Hammerle decided not to proceed with Sterling's alibi defense.  Instead, Hammerle pursued an aggressive reasonable-doubt defense by attacking the credibility of the State's eyewitnesses—a decision he made after consulting with Sterling.  *See Timberlake*, 753 N.E.2d at 603 ("Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference.").  Sterling fails to show he suffered prejudice due to Hammerle's strategic decision not to call the proposed witnesses.  Therefore, we are not led to a conclusion opposite that reached by the post-conviction court.  *See McCary*, 761 N.E.2d at 391.

## III.  Ineffective Assistance of Post-Conviction Counsel

[18]   Sterling argues his post-conviction counsel rendered ineffective assistance by failing to raise whether Hammerle, in his capacity as both trial and appellate counsel, rendered ineffective assistance by failing to address the State's alleged use of perjured testimony.  The State counters, 1) Sterling's argument that post-

---

[5] For example, one of Sterling's proposed witnesses, Quianna Johnson, would have testified the shooter's body type did not match Sterling's body type.  However, her testimony would have also made "the fatal corroboration of the State's case that the individuals came from across an alley from across the street, which was the very place that other witnesses had placed Mr. Sterling walking."  PCR Tr. at 53.  Thus, this testimony not only would have likely defeated Sterling's alibi defense, but would likely mitigate an attempt at creating reasonable doubt.

conviction counsel rendered ineffective assistance does not present a reviewable claim, because counsel appeared and represented Sterling in a procedurally fair setting, and 2) Sterling procedurally defaulted on any claim the State used perjured testimony at trial because he did not include the claim in his direct appeal.

[19] Although there are claims of ineffective assistance of trial and appellate counsel in regard to the allegedly perjured testimony, we do not interpret these as freestanding claims because they merely form the basis of Sterling's claim of ineffective assistance of post-conviction counsel. Therefore, our sole focus is whether Sterling's post-conviction counsel rendered ineffective assistance.

[20] There is no federal or state constitutional right to counsel in post-conviction proceedings. *Hill v. State*, 960 N.E.2d 141, 145 (Ind. 2012).

> We therefore apply a lesser standard responsive more to the due course of law or due process of law principles which are at the heart of the civil post-conviction remedy. We adopt the standard that if counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous standard set forth in [*Strickland*].

*Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989).

[21] Here, post-conviction counsel actively advocated for Sterling throughout the post-conviction proceedings; she twice amended the petition for post-conviction relief, appeared at three separate evidentiary hearings, and subpoenaed witnesses. There is nothing in the record suggesting counsel did not appear and

represent Sterling in a procedurally fair setting that resulted in a judgment of the court. Therefore, we are not persuaded Sterling received ineffective assistance of post-conviction counsel.

# Conclusion

[22] The post-conviction court did not err in denying Sterling's petition for post-conviction relief. Because Sterling fails to demonstrate he received ineffective assistance of trial or post-conviction counsel, we affirm the post-conviction court's denial of post-conviction relief.

[23] Affirmed.

Vaidik, C.J., and Pyle, J., concur.