William **PERRY**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 49S00–9311–CR–1223.

Supreme Court of Indiana.

Aug. 10, 1994.

I. Marshall Pinkus, Dutton Overman Goldstein Pinkus, P.C., Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant was tried by a bench trial and convicted of Count I, Conspiracy to commit dealing in cocaine, a Class A felony; Count II, Dealing in Cocaine, a Class A felony; and Count III, Possession of Cocaine, a Class C felony. He was sentenced to thirty (30) years on Count I, which was enhanced by an additional thirty (30) years due to a finding that he is a habitual offender. He received thirty (30) years for Count II, to run consecutive to Count I. He also received four (4) years for Count III, to run concurrent with Count II.

The facts are: On October 20, 1990, Jeff Poikey, an undercover narcotics officer, agreed with Thomas Gasper to purchase an "eight-ball" of cocaine. Shortly after that, they went to a local bar where Gasper placed a telephone call to appellant's pager. A few minutes later, appellant called Gasper back at which time Gasper asked appellant to sell him an "eight-ball" of cocaine. Appellant agreed to sell Gasper the cocaine for a purchase price of $150 and a certain quantity of marijuana. Appellant also agreed to deliver the cocaine to Gasper's home. Gasper and Officer Poikey returned to Gasper's home where they waited for appellant to deliver the cocaine.

Subsequently, Rosieanne Faceson, appellant's girlfriend, arrived outside Gasper's home in appellant's car. Gasper met with Faceson in the car and gave her cash and marijuana in exchange for the cocaine. Faceson counted the money and determined that it was $5 short. Consequently, she made Gasper return the cocaine to her. After Faceson left the scene, Officer Poikey

transmitted a radio broadcast describing the car she was driving and ordered that it be stopped.

The broadcast made by Officer Poikey was heard by Officer Mark Burke, who stopped the car. Officer Burke searched the car and discovered a plastic bag containing a white powdered substance which was believed to be cocaine. Based on this discovery, Officer Burke transported Faceson to the police station and impounded the car.

Officer Poikey advised Faceson of her *Miranda* rights and she signed a waiver of rights form. Faceson then informed the police that appellant gave her the cocaine and instructed her to deliver it to the home of Thomas Gasper. At the request of the police, Faceson telephoned appellant and informed him that the deal had not been completed and asked what she should do with the cocaine. Appellant responded, "You don't call me up after you've been sitting on a dope house for twenty (20) minutes."

Officer Burke subsequently accompanied Faceson to her home where he asked her to call appellant and ask him to come to the house. Several minutes after Faceson made the call, appellant arrived at the home. Upon his arrival, appellant was arrested by Officer Burke.

Faceson later signed a consent to search form for the residence. Appellant assisted the police in their search by opening a safe that contained approximately six thousand dollars ($6,000). He then led them to a kitchen garbage can where the officers found several plastic bags with the corners cut out. Appellant also led the officers to a window sill upon which were four bags of cocaine, and he showed them a scale which he used to weigh marijuana. The officers also recovered two bottles of Inositol, a substance used to dilute cocaine.

■ Appellant contends he was denied effective assistance of counsel. He cites three instances in which he claimed his trial counsel fell below the required standard. First, he contends his trial counsel encouraged and advised him to flee during the course of the trial.

To support his contention, appellant cites an affidavit in the record by Darnessa Y. Moore, a paralegal for the Marion County Municipal Court Public Defender's Office. Ms. Moore accompanied appellant to a suppression hearing. In her affidavit, Ms. Moore states that she overheard appellant's attorney say the following:

" 'One, you could go to trial and take the chance of being found guilty, at least for the conspiracy to sell cocaine, and habitual, or two, plead guilty and receive a minimum time sentence of thirty years.' He then stated, 'you already know what your third is', and went on to say that, 'he knew of some people who chose to run.' "

Appellant fled during a recess of the trial on April 10, 1992. The judge decided to proceed with the trial and habitual offender proceeding in the absence of appellant. Appellant claims he fled because his attorney advised him, during the recess, that it was in his best interest to leave.

The record indicates that appellant's attorney expressed uncertainty as to the whereabouts of his client when questioned by the court. Further, his attorney moved for a continuance stating that he could not present a proper defense because appellant was an essential witness to the case who intended to testify in his own behalf. After the court denied a continuance, appellant's trial counsel offered the testimony of numerous defense witnesses.

We cannot say that the attorney's conduct constituted ineffective assistance of counsel. While the paralegal's affidavit deserves a certain degree of credibility, counsel's quoted statement does not rise to the level of advising his client to flee. Based on the surrounding facts and circumstances, we believe it merely was proffered as a facetious rhetorical comment. It is difficult to accept the notion that appellant somehow interpreted that statement as an endorsement from his attorney to flee. Thus his conduct does not fall below the standard required in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

■ Appellant also claims his trial counsel failed to interview several defense witnesses prior to trial. The fact that trial

counsel did not interview these witnesses prior to trial does not in and of itself demonstrate ineffective assistance of counsel. To prevail on his claim, appellant must show first, that his attorney's performance was deficient, and second, that the defense was prejudiced by the deficient performance. *Id.*

We find no impairment in the manner in which counsel questioned the witnesses on direct examination. Also, there has been no showing that the outcome of the trial would have been any different had counsel interviewed the witnesses prior to trial. Therefore, we are unable to say that counsel's handling of the trial fell below the standards set forth in *Strickland.*

■ Appellant claims his counsel was ineffective in that although he filed a motion to suppress cocaine and drug paraphernalia seized by the police, which motion was overruled by the trial court, he failed to object at trial when this evidence was submitted by the State. Appellant contends his counsel's failure to object at trial to the evidence waived the issue on appeal, citing *Hart v. State* (1991), Ind., 578 N.E.2d 336 and *Wilson v. State* (1987), Ind., 514 N.E.2d 282.

A review of the record in this case indicates that appellant's counsel did in fact object to the admission of the evidence at trial. When the State moved to introduce the evidence, appellant's trial counsel offered the following objection:

"I do object to the admission of the evidence of cocaine, the Inositol which—(unintelligible)—testimony, and the scales, but, in particular, I would object to the entry of the evidence into evidence because I don't believe that the State's proved a chain of custody. Aside from the ongoing motions established at the beginning of this trial, the fact that defence believes that the—this evidence was obtained illegally with an illegal search of the residence, but aside from that I don't believe the State has proved that there's been a chain of custody of this evidence that they're attempting to admit into evidence at the present time, and for that reason we would object, Your Honor." (Record 674–75)

Appellant contends the above objection was insufficient to preserve for appeal the issue concerning an illegal search by the police because it was based primarily on the chain of custody ground. However, counsel referred to the pretrial motion issue in his objection which serves to preserve it on appeal. Counsel should not be faulted for failing to elaborate further on issues that were substantially argued during the suppression hearing. This conduct does not fall short of the *Strickland* standards.

Appellant claims the trial judge committed a reversible error by admitting evidence that was obtained from an illegal search and seizure. Specifically, appellant claims that Faceson did not have the authority to consent to the police's request to search the house and without a warrant the evidence seized by the police should have been inadmissible.

■ During a hearing on the motion to suppress, Benita Jones testified that she owned the residence and was selling the home on contract to James Perry, appellant's uncle. She further testified that Mr. Perry allowed appellant to live in the home and that Faceson resided with appellant at the house "on and off." Faceson testified that, while she once lived at the residence, she moved out in March of 1990. However, Officer Poikey testified that during questioning Faceson informed him that she and appellant lived at the house. Officer Poikey accompanied Faceson to the residence observing that Faceson entered by key. Faceson also signed a consent to search form.

Appellant contends that Faceson's consent was invalid because she was an "agent of the state." He points to the fact that Faceson telephoned appellant on two occasions at the request of the police.

■ Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Wright v. State* (1992), Ind., 593 N.E.2d 1192. However, a valid consent to search obviates the warrant requirement. *Id.* Consent to a search which is given by a third party having common authority or a sufficient relationship to the

premises to be searched is sufficient to justify a warrantless search. *Id.*

■ Common authority is not to be implied from the mere property interest a third party has in the property. *Stallings v. State* (1987), Ind., 508 N.E.2d 550. The authority which justifies the third-party consent rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Id.* When reviewing a trial court determination of the validity of a search, we consider the evidence favorable to the trial court's ruling and any uncontradicted contrary evidence. *Id.* The above evidence was sufficient.

Even if the police's belief that Faceson was a resident of the house to be searched was erroneous, the search of the premises and following seizure of property are valid if the belief was reasonable. *See Illinois v. Rodriguez* (1990), 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148. We believe that, based on all the surrounding facts and circumstances, the police believed that Faceson was a resident of the house and had authority to consent to a search of the premises.

■ We find no merit in appellant's contention that the search was invalid because Faceson was an "agent of the state." The police gave Faceson her *Miranda* warnings at which time she decided to waive her rights and disclose the underlying facts of her involvement in the offense. There is no evidence that would suggest she somehow became an "agent of the state" assisting the police in their investigation of the crime. Without such evidence, we are unable to find fault with the police's utilization of Faceson.

Appellant contends the trial court erred in denying his motion for continuance a day before the commencement of the trial. Appellant claims he sought the continuance because of his dissatisfaction with his attorney, based partly on inadequate preparation for trial, and his desire to hire another attorney. He concedes the granting of a continuance is within the sound discretion of the trial court.

■ Continuances sought shortly before trial to hire a new attorney are disfavored because they cause substantial loss of time for jurors, lawyers and the court. *Beadin v. State* (1989), Ind., 533 N.E.2d 144; *Roberts v. State* (1986), Ind., 500 N.E.2d 197. In *Beadin,* the defendant sought a continuance several days prior to trial because he felt his attorney was not adequately prepared for trial and he wanted to retain new counsel. This Court found that the trial court's decision in *Beadin* to deny the continuance was not an abuse of discretion.

■ Had appellant been dissatisfied with the trial preparation of his attorney, in the instant case, he could have hired another attorney at an earlier time. Instead, he sought a continuance a day before the trial. The trial court was within its discretion to deny the continuance.

Appellant contends there is insufficient evidence to support the finding that he is a habitual offender. During the habitual offender phase of the proceedings, the State produced two separate informations. One charged appellant with attempted robbery in November of 1980. This resulted in a six-year sentence. The second charged possession of cocaine in June of 1989. A plea of guilty resulted in a two-year sentence.

In addition, the State offered the testimony of Mike Petty, a latent fingerprint examiner, who testified that he examined appellant's fingerprints and determined that appellant's fingerprints from the present trial matched the fingerprints obtained from the two prior convictions. Petty also testified that, despite appellant's unwillingness to sign the card when he fingerprinted him, appellant identified himself as William Perry.

■ To sustain a habitual offender determination, the State must prove that the defendant had been twice convicted and sentenced for felonies, that the commission of the second was subsequent to his having been sentenced upon the first, and that the commission of the principal offense upon which the enhanced punishment is being sought was subsequent to his having been

**1242**

sentenced upon the second conviction. *McCovens v. State* (1989), Ind., 539 N.E.2d 26.

 Appellant contends the habitual offender determination was insufficient because the State failed to identify him during the habitual offender proceeding. He bases this contention on the fact that he was not present at the habitual offender proceeding and that Petty's testimony that the person whom he fingerprinted identified himself as William Perry was hearsay.

We find there was sufficient evidence furnished by the State to support the habitual offender determination. It was appropriate for the State to utilize a fingerprint examiner to match appellant's various fingerprints in his absence. Since appellant was the defendant during the trial, the statement he made to Petty was not hearsay and therefore admissible.

 Appellant claims the evidence is insufficient to support the convictions. On review of a question of sufficiency of the evidence, we will not reweigh the evidence nor judge the credibility of the witnesses. *Miller v. State* (1990), Ind., 563 N.E.2d 578. We will consider only that evidence which supports the verdicts and all reasonable inferences to be drawn therefrom. *Id.* The findings made by the trier of fact will not be disturbed where there is substantial evidence of probative value to support the conviction. *Id.*

 The State presented evidence to show that appellant agreed to sell an "eight-ball" or 3.5 grams of cocaine to Gasper which later was delivered to Gasper by, Faceson, appellant's girlfriend. Faceson subsequently was arrested and the police seized from the car she was driving a plastic bag that contained cocaine. Faceson informed the police that appellant instructed her to deliver the cocaine to Gasper. Upon searching the house where appellant resided, the police found four bags of cocaine and two bottles of Inositol. This evidence is sufficient to support the convictions.

Appellant contends the evidence is insufficient to support the convictions for dealing in cocaine and possession of cocaine because they are based substantially on illegal evidence seized by the police in their search of appellant's residence. Appellant states that the convictions cannot be sustained without the use of the tainted evidence. As mentioned earlier in the opinion, the evidence obtained by the police was not seized illegally; and, therefore was admissible in appellant's trial.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.