

**ATTORNEY FOR APPELLANT**

Steven Knecht
Tippecanoe County Public Defender's
Office
Lafayette, Indiana

**ATTORNEYS FOR APPELLEE**

Theodore E. Rokita
Attorney General of Indiana

Erica S. Sullivan
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.M.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner.* | October 26, 2023<br><br>Court of Appeals Case No.<br>23A-JV-395<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Faith A. Graham,<br>Judge<br><br>Trial Court Cause Nos.<br>79D03-2208-JD-111<br>79D03-2209-JD-140 |

**Opinion by Judge Tavitas**
Judge Kenworthy concurs.
Judge Bailey concurs in result with a separate opinion.

**Tavitas, Judge.**

## Case Summary

[1] D.M., a minor, was adjudicated a delinquent child for committing possession of a firearm on school property, dangerous possession of a firearm, and criminal recklessness. On appeal, D.M. argues that: (1) his adjudications for possession of a firearm on school property and dangerous possession of a firearm constitute double jeopardy; and (2) the State presented insufficient evidence to support his adjudication for criminal recklessness.

[2] We agree that D.M.'s adjudications for possession of a firearm on school property and dangerous possession of a firearm constitute double jeopardy, and we, accordingly, reverse and remand with instructions that the trial court vacate D.M.'s adjudication for dangerous possession of a firearm. We further find that the State presented sufficient evidence to support D.M.'s adjudication for criminal recklessness, and we affirm D.M.'s adjudication for that offense.

## Issues

[3] D.M. raises two issues on appeal, which we restate as:

I. Whether D.M.'s adjudications for possession of a firearm on school property and dangerous possession of a firearm constitute double jeopardy.

II. Whether the State presented sufficient evidence to support D.M.'s adjudication for criminal recklessness.

## Facts

In the summer of 2022, D.M. dated A.G. for approximately three months, at the end of which A.G. ended the relationship and blocked D.M.'s phone number. A.G. was pregnant with D.M.'s child. A.G. had also, in the past, dated M.V., who was a childhood friend of D.M.'s but was no longer D.M.'s friend.

On the evening of August 4, 2022, A.G. was at Nasir Mercado's apartment with M.V., H.M., and several other individuals. D.M. had been to Mercado's apartment in the past, but he was not there that evening.

D.M. and H.M. were family friends, and H.M. texted D.M. that she was at Mercado's home and "[t]hey talking ab u tryina shoot up the crib . . . ." Ex. Vol. III p. 26. D.M. responded by texting that he was "strapped," meaning he "ha[d] a gun with him." *Id*.; Tr. Vol. II p. 120. H.M. asked D.M. not to "shoot up the crib" because H.M. was there with her child. Ex. Vol. III p. 26. D.M. asked H.M. who was at Mercado's apartment and specifically asked if M.V. was there. H.M. told D.M. that M.V. was not there because H.M. did not want "drama" between D.M. and M.V. Tr. Vol. II p. 118. D.M. later texted H.M., "Told yo a** how cold hearted I'm finna get," and "Just watch nobody gon know my next move[.]" Ex. Vol. III p. 45.

Messages were also sent to A.G.'s cell phone from D.M.'s Instagram account, stating, "I'm finna pull up with pipes later tn," and "this G2 'bout to catch three bodies[.]" Tr. Vol. II pp. 148-49. Detective Paul Huff of the Lafayette Police

Department testified that, in his experience, "G2" refers to the model of a gun, and "catch three bodies" means shoot three people. The messages included a photograph of a Taurus G2C nine-millimeter handgun.

[8] H.M. believed that A.G. and M.V. needed to leave the apartment to avoid an altercation with D.M. Mercado asked A.G. and M.V. to leave, but they did not have a ride. Mercado then asked his friend, Melanie Hernandez, to give A.G. and M.V. a ride home. In the early morning hours of August 5, Hernandez, A.G., M.V., and several others got into Hernandez's car, which was parked in the apartment lot. As Hernandez backed up her car, gunshots were fired at the car. Hernandez saw "muzzle flashes" coming from behind her car and felt something hit the car. *Id*. at 103. Hernandez quickly drove away, and she later observed bullet holes in her car that had not previously been there.

[9] Police subsequently investigated the shooting and found six nine-millimeter cartridge cases on the ground of the parking lot of a Village Pantry that was located close to Mercado's apartment. Police viewed the Village Pantry's security footage of its parking lot from the early morning hours on August 5 and saw an individual shooting toward Mercado's apartment complex. The video quality, however, was too poor to allow identification of the shooter.

On August 6, Lafayette Police Department Officer James Jarrett received a call from dispatch advising him to arrest D.M.[1] D.M. was last seen at the football stadium at Jefferson High School. Officer Jarrett went to the football stadium and recognized D.M. in line at a concession stand. Officer Jarrett was aware that D.M. "possibly had a handgun in his possession" and arrested D.M. *Id.* at 14. Officer Jarrett performed a search incident to arrest and found a loaded Taurus G2C nine-millimeter handgun in D.M.'s pocket. Forensic testing later confirmed that the gun found in D.M.'s pocket was the same one that fired the cartridge cases found in the Village Pantry parking lot the previous day.

On August 9, 2022, the State alleged that D.M. was a delinquent child for committing possession of a firearm on school property, a Level 6 felony if committed by an adult, and dangerous possession of a firearm, a Class A misdemeanor. On September 14, 2022, in a different cause number, the State alleged that D.M. was a delinquent child for committing attempted aggravated battery, a Level 3 felony if committed by an adult, and criminal recklessness, a Level 6 felony if committed by an adult.

All four allegations were heard together, and the juvenile court adjudicated D.M. delinquent on all allegations except attempted aggravated battery. The

---

[1] It is not clear from the record whether Officer Jarrett was advised to arrest D.M. based on the previous day's shooting or for separate reasons.

court granted wardship of D.M. to the Indiana Department of Correction. D.M. now appeals.

## Discussion and Decision

### I. Double Jeopardy

[13] D.M. first argues that his adjudications for possession of a firearm on school property and dangerous possession of a firearm constitute double jeopardy. We agree.

[14] We review double jeopardy violation claims de novo. *Gaunt v. State*, 209 N.E.3d 463, 465 (Ind. Ct. App. 2023) (citing *Wadle v. State,* 151 N.E.3d 227, 237 (Ind. 2020); *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020)), *trans. denied*.

[15] "[S]ubstantive double jeopardy claims come in two principal varieties: (1) when a single criminal act or transaction violates a single statute but harms multiple victims, and (2) when a single criminal act or transaction violates multiple statutes with common elements and harms one or more victims." *Demby v. State*, 203 N.E.3d 1035, 1041-42 (Ind. Ct. App. 2021) (citing *Wadle*, 151 N.E.3d at 247), *trans. denied*. Our Supreme Court's decision in *Powell v. State*, 151 N.E.3d 256, addresses the first variety, and its decision in *Wadle v. State*, 151 N.E.3d 227, addresses the second. Double jeopardy protections apply as much in juvenile proceedings as they do in criminal trials. *H.M. v. State*, 892 N.E.2d 679, 681 (Ind. Ct. App. 2008), *trans. denied*. Accordingly, because the two challenged adjudications here implicate two statutes, the *Wadle* test applies.

"The first step in the *Wadle* test is to determine whether 'either statute clearly permits multiple punishment, whether expressly or by unmistakable implication.'" *Demby*, 203 N.E.3d at 1042 (quoting *Wadle*, 151 N.E.3d at 253). If the language of either statute clearly permits multiple punishment, "the court's inquiry comes to an end and there is no violation of substantive double jeopardy." *Wadle*, 151 N.E.3d at 248 (footnote omitted). Here, the parties do not dispute that neither the possession of a firearm on school property statute nor the dangerous possession of a firearm statute clearly permit multiple punishment. Accordingly, we turn to *Wadle*'s second step.

*Wadle*'s second step asks whether the offenses are included "either inherently or as charged . . . ." *Id.* An offense is "inherently included" if it meets the definition of "included offense" in Indiana Code Section 35-31.5-2-168.[2] Meanwhile, an offense is included as charged (or "factually included") if "'the charging instrument alleges that the means used to commit the crime charged

---

[2] Indiana Code Section 35-31.5-2-168 provides,

"Included offense" means an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

include all of the elements of the alleged lesser included offense.'"[3] *Id.* at 251 n.30 (quoting *Young v. State*, 30 N.E.3d 719, 724 (Ind. 2015)).

[18] Here, we find that D.M.'s challenged adjudications are included as charged. The State alleged that D.M. was a "delinquent child" for committing Count I, possession of a firearm on school property, and Count II, dangerous possession of a firearm. Appellant's App. Vol. II p. 18. Possession of a firearm on school property is governed by Indiana Code Section 35-47-9-2, which provides, in relevant part:

> (a) [A] person who knowingly or intentionally possesses a firearm:
>
>> (1) in or on school property; or
>>
>> (2) on a school bus;
>
> commits a Level 6 felony. . . .

---

[3] We do not consider the facts adduced at trial when determining whether offenses are included as charged; rather, under *Wadle*, we look solely to the charging information. *See Wadle*, 151 N.E.3d at 253 ("If neither offense is included in the other (either inherently or as charged), there is no violation of double jeopardy. But if one offense is included in the other (either inherently or as charged), **then** the court must examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial.") (emphasis added); *Mills v. State*, 211 N.E.3d 22, 34 (Ind. Ct. App. 2023) ("[O]nce a court has determined an offense is not included inherently or 'as charged' in another offense, there is no need to look at the evidence presented at trial."). To be sure, prior to *Wadle*, we employed the "actual evidence test" announced in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), and that test asked "whether two or more offenses are the same based on the evidence **actually** presented at trial . . . ." *Wadle*, 151 N.E.3d at 239 (emphasis in original). In *Wadle*, however, our Supreme Court "expressly overrule[d]" *Richardson*'s actual evidence test and replaced it with *Wadle*'s tripartite framework. *Id.* at 244.

Dangerous possession of a firearm, meanwhile, is governed by Indiana Code Section 35-47-10-5, which provides, in relevant part:

> (a) A child who knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in section 1 of this chapter commits dangerous possession of a firearm, a Class A misdemeanor. . . .

[19] Turning to the facts alleged in the charging information, Count I alleges that, on August 6, 2022, D.M. "possess[ed] a firearm in or on school property," and Count II alleges that D.M. "possess[ed] a firearm" on the same date. Appellant's App. Vol. II p. 18. Both charges were based on D.M. being a minor in possession of a firearm on August 6, 2022. The possession of a firearm on school property allegation, thus, alleged all of the facts necessary for the State to prove the dangerous possession of a firearm allegation. Accordingly, the latter offense was included as charged, and we must analyze *Wadle*'s third and final step.[4]

[20] Under *Wadle*'s third step, we "examine the facts underlying th[e] offenses, as presented in the charging instrument and as adduced at trial" and determine whether "the defendant's actions were so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 253. "If the facts show two separate and

---

[4] Because we conclude that D.M.'s challenged adjudications are included as charged, we do not decide whether they are inherently included under Indiana Code Section 35-31.5-2-168.

distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, 'included' in the other." *Id*. at 249. Here, the facts underlying both of the charges against D.M. were that he possessed the same firearm on the same day during the same time period. Thus, the two offenses were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id*.

[21] D.M.'s adjudications for possession of a firearm on school property and dangerous possession of a firearm constitute double jeopardy. The delinquency adjudication for dangerous possession of a firearm—the lesser included offense—must, therefore, be vacated. *See Demby*, 203 N.E.3d at 1046.

## II. Sufficiency of the Evidence

[22] D.M. next challenges the sufficiency of the evidence to support his adjudication for criminal recklessness, a Level 6 felony if committed by an adult. We find the evidence sufficient.

[23] Sufficiency of evidence claims "warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility." *Powell*, 151 N.E.3d at 262 (citing *Perry v. State*, 638 N.E.2d 1236, 1242 (Ind. 1994)). "When there are conflicts in the evidence, the jury must resolve them." *Young v. State*, 198 N.E.3d 1172, 1176 (Ind. 2022). We consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence. *Powell*, 151 N.E.3d at 262 (citing *Brantley v. State*, 91 N.E.3d 566, 570 (Ind. 2018)). "We will affirm a conviction if there is substantial evidence of probative value that

would lead a reasonable trier of fact to conclude that the defendant was guilty beyond a reasonable doubt." *Id.* at 263. We affirm the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Sutton v. State*, 167 N.E.3d 800, 801 (Ind. Ct. App. 2021) (quoting *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007)).

[24] Criminal recklessness is defined by Indiana Code Section 35-42-2-2, which provides, in relevant part:

> (a) A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness. Except as provided in subsection (b), criminal recklessness is a Class B misdemeanor.
>
> (b) The offense of criminal recklessness as defined in subsection (a) is:
>
>> (1) a Level 6 felony if:
>>
>>> (A) it is committed while armed with a deadly weapon[.]

[25] Here, the State presented evidence that D.M. sent threatening messages to people at Mercado's apartment, including his ex-girlfriend, A.G., on the evening of August 4 and/or the early morning of August 5. Those messages warned that he had a gun and was about to shoot "three bodies." Tr. Vol. II p.

149.  D.M. had been to Mercado's apartment before, so he was aware of its location.  Gun casings were found at the Village Pantry, near where Hernandez's car was shot on August 5.  And the next day, D.M. was found in possession of the gun that matched the casings found at the Village Pantry.

[26]  We find this evidence sufficient to support D.M.'s adjudication for criminal recklessness.  D.M.'s assertions to the contrary are simply requests that we reweigh the evidence and judge witness credibility, which we cannot do.

## Conclusion

[27]  D.M.'s adjudications for possession of a firearm on school property and dangerous possession of a firearm constitute double jeopardy.  We, therefore, reverse and remand with instructions that the juvenile court vacate the adjudication for dangerous possession of a firearm.  The State, however, presented sufficient evidence to support D.M.'s adjudication for criminal recklessness, and we affirm that adjudication.

[28]  Affirmed in part, reversed in part, and remanded.

Kenworthy, J., concurs.

Bailey, J., concurs in result with separate opinion.

**Bailey, Judge, concurring in result.**

[29] I concur in the result, and I concur in full with the majority's analysis in Section II. I also concur with the majority's conclusion in Section I that D.M.'s challenged adjudications constitute double jeopardy because they are included as charged and the facts underlying each offense show only a single continuous crime. However, I write separately because I cannot concur with footnote 3 of the majority's opinion; I do not believe that the decision in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), precludes consideration of the facts adduced at trial when determining whether one charged offense is included in another charged offense.

[30] As noted by the majority of the Court of Appeals panels who have addressed the issue since *Wadle*, when one offense, as "charged *and tried*," is factually included in the other, it is an included offense under the second step of the *Wadle* double jeopardy analysis. *Phillips v. State*, 174 N.E.3d 635, 647 (Ind. Ct. App. 2021) (emphasis added); *see also Starks v. State*, 210 N.E.3d 818, 821-22 (Ind. Ct. App. 2023); *Harris v. State*, 186 N.E.3d 604, 611-12 (Ind. Ct. App. 2022). Thus, we look not only at the language of the charging information, but also the facts that must be proven at trial to determine whether one offense is included in the other, either inherently or as charged. *Id*.; *see also* Ind. Code § 35-31.5-2-168 (defining an "included offense," in relevant part, as an offense

that "is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged").

[31] Here, both the charging information and the facts adduced at trial establish that the delinquent act of dangerous possession of a firearm is "included" in the delinquent act of possession of a firearm on school property. The delinquency petition alleges that the means used to commit both delinquent acts was D.M.'s "possess[ion of] a firearm" on August 6, 2022. App. v. II at 18. And the facts that had to be proven at trial for each delinquent act were that D.M. was a minor in possession of the same firearm on the same date. Therefore, one offense, as charged and tried, was factually included in the other. *See Harris*, 186 N.E.3d at 611 (finding a double jeopardy violation where pointing a firearm was alleged to be the means used to commit both intimidation with a deadly weapon and pointing a firearm).